## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OKLAHOMA

LENA W.,                              )
                                      )
       Plaintiff,                  )
                                      )
v.                                    )      **Case No. 19-CV-558-CVE-CDL**
                                      )
ANDREW M. SAUL,                       )
Commissioner of the                   )
Social Security Administration,       )
                                      )
       Defendant.                  )

## REPORT AND RECOMMENDATION

Plaintiff seeks judicial review under 42 U.S.C. § 405(g) of a decision of the Commissioner of the Social Security Administration (Commissioner) denying Social Security disability benefits. The matter has been referred to the undersigned for report and recommendation.[1] For the reasons set forth below, the undersigned **recommends** that the district court **affirm** the Commissioner's decision.

### I.    Legal Standards

#### A.    Standard of Review

Judicial review of a Commissioner's disability determination "is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (quoting *Knight ex rel. P.K. v. Colvin*, 756

---

[1]    On November 5, 2020, the action was reassigned from Magistrate Judge Frank H. McCarthy pursuant to General Order 20-37. (Doc. 21).

F.3d 1171, 1175 (10th Cir. 2014)). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1178 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005)); *see also Biestek v. Berryhill*, __ U.S. __, 139 S. Ct. 1148, 1154 (2019). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Noreja*, 952 F.3d at 1178 (quoting *Grogan*, 399 F.3d at 1261-62).

So long as supported by substantial evidence, the agency's factual findings are "conclusive." *Biestek*, 139 S. Ct. at 1152 (quoting 42 U.S.C. § 405(g)). Thus, the court may not reweigh the evidence or substitute its judgment for that of the agency. *Noreja*, 952 F.3d at 1178.

### B.    Five-Step Agency Process

The Social Security Act (Act) provides disability insurance benefits to qualifying individuals who have a physical or mental disability. *See* 42 U.S.C. § 423. The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See id.* § 423(d)(1)(A).

The Commissioner uses a five-step, sequential process to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). A finding that the claimant is disabled or is not disabled at any step ends the analysis. *See id.*; *see also Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 1007) (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)).

At step one, the ALJ determines whether the claimant is engaged in any substantial gainful activity. A person who is performing substantial gainful activity is not disabled.

At step two, the ALJ determines whether the claimant has an impairment or a combination of impairments that is severe. "This determination is governed by the Secretary's severity regulations, is based on medical factors alone, and, consequently, does not include consideration of such vocational factors as age, education, and work experience." *Williams*, 844 F.2d at 750 (internal citation omitted). A claimant who does not have a severe impairment is not disabled.

At step three, the ALJ determines whether the claimant's severe impairment or combination of impairments is equivalent to one that is listed in the applicable regulation, which the Commissioner "acknowledges are so severe as to preclude substantial gainful activity." *Williams*, 844 F.2d at 751 (internal quotation and citation omitted); *see* 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpt. P, App'x 1 (Listings). If the claimant has an impairment that meets all the criteria of a Listing, the claimant is disabled. Otherwise, the ALJ proceeds to step four.

At step four, the claimant must show that her impairment or combination of impairments prevents her from performing her previous work. If the claimant can perform her past relevant work, she is not disabled. Step four is comprised of three distinct phases. *See Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ determines the claimant's residual functional capacity (RFC) "based on all the relevant medical and other

evidence." 20 C.F.R. § 404.1520(e).[2] Second, the ALJ determines the physical and mental demands of the claimant's past relevant work. *Winfrey*, 92 F.3d at 1023 (citing 20 C.F.R. § 404.1520(e)). Finally, the ALJ determines whether the RFC found in phase one allows the claimant to meet the job demands found in phase two. *Winfrey*, 92 F.3d at 1023 (citing Social Security Ruling (SSR) 86-8). If the claimant can perform her past relevant work, she is not disabled.

The claimant bears the burden on steps one through four. *Lax*, 489 F.3d at 1084. If the claimant satisfies this burden, thus establishing a prima facie case of disability, the burden of proof shifts to the Commissioner to show at step five that the claimant retains the capacity to perform other work available in the national economy, in light of the claimant's age, education, and work experience. *Id.*

## II.    Procedural History

Plaintiff applied for disability benefits on January 31, 2017, alleging a disability onset date of November 28, 2016. (R. 15, 210-213).[3] Plaintiff alleged disability due to herniated discs in her back, neuropathy, hearing loss, and severe headaches. (R. 239). Before

---

[2]      A claimant's RFC represents "the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1); *see Williams*, 844 F.2d at 751. The RFC assessment is made "based on all of the relevant medical and other evidence" in the claimant's record. 20 C.F.R. § 404.1545(a)(3). When a claimant has multiple impairments, the Commissioner "consider[s] all of [a claimant's] medically determinable impairments of which [the Commissioner is] aware." 20 C.F.R. § 404.1545(a)(2).

[3]      Although the ALJ's decision states Plaintiff filed her application on January 31, 2017, evidence in the record indicates that her application was completed on February 1, 2017.

4

her alleged disability, Plaintiff worked in fast food restaurants as a manager, assistant manager, production worker, and shift leader. (R. 240; R. 27-28).

Plaintiff's claim was denied initially and on reconsideration. Administrative Law Judge (ALJ) Lantz McClain held a hearing on December 21, 2018, at which Plaintiff was represented by counsel. (R. 84). A vocational expert (VE) also testified at the hearing. *Id.* Both before and after the hearing, the ALJ permitted Plaintiff's counsel to submit additional medical evidence, which the ALJ admitted into the record. (R. 15).

The ALJ denied benefits in a decision dated January 18, 2019, and Plaintiff appealed the ALJ's decision to the Appeals Council (R. 1-5, 15-29). The Appeals Council denied Plaintiff's request for review on August 27, 2019, rendering the ALJ's decision the final decision of the Commissioner. (R. 1-5). Plaintiff then timely appealed to the district court.

## III.   The ALJ's Decision

### A.  Step One

At step one, the ALJ found that Plaintiff is insured through December 31, 2021 and that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date of November 28, 2016. (R. 17-18).

### B.  Step Two

At step two, the ALJ found that Plaintiff suffers from the severe impairments of degenerative disc disease of the lumbar spine, peripheral neuropathy in her feet, borderline obesity, and poor hearing. (R. 18). The ALJ found that Plaintiff has the non-severe impairments of carpal tunnel syndrome, headaches, degenerative disc disease of the cervical spine, and depression. *Id*. The ALJ found that Plaintiff's bilateral neuropathy is a non-

5

medically determinable impairment, noting that there is no evidence in the record of a diagnosis or of ongoing treatment for this impairment. (R. 20).

The ALJ also considered Plaintiff's mental impairment using the "paragraph B" criteria—four broad general areas of functioning that the agency uses to determine the severity of a mental impairment. *See* 20 C.F.R. pt. 404, subpt. P, App'x 1. The ALJ found that Plaintiff has a mild limitation in the area of understanding, remembering, or applying information, noting that Plaintiff followed written instructions "well" and provided testimony at the hearing demonstrating that she can ask and answer questions and provide explanations. (R. 19). The ALJ found Plaintiff is limited in the area of interacting with others due to hearing loss but that this limitation is mild, citing Plaintiff's self-reported activities of daily living and testimony about her relationships. *Id.* He found Plaintiff has a mild limitation in concentrating, persisting, or maintaining pace, noting that she scored 26/30 on the Montreal Cognitive Assessment (MoCA) and can prepare meals, drive a car, and pay attention as long as needed. *Id.* In the area of adapting or managing oneself, the ALJ found Plaintiff has a mild limitation due to hearing loss. *Id.* Because the ALJ found no more than mild limitations in any of the paragraph B functional areas, he determined that Plaintiff's medically determinable mental impairment is non-severe. *Id.*

### C. Step Three

At step three, the ALJ determined that Plaintiff's impairments do not meet or medically equal a Listing. The ALJ gave special consideration to Listings relating to the musculoskeletal system (Listing 1.00), special senses and speech (Listing 2.00), neurological disorders (Listing 11.00), and mental disorders (Listing 12.00). (R. 20). The

ALJ also addressed the requirement to consider obesity at steps two through five. *See* SSR 02-1p. The ALJ stated that he took considerations related to obesity into account at each of those steps, "even though no treating or examining medical source has specifically attributed additional or cumulative limitations to [Plaintiff's] obesity." (R. 20).

### D.     Step Four

#### i.     RFC

The ALJ found that Plaintiff has the RFC to perform light work, with the following limitations:

> [Plaintiff] can lift/carry 20 pounds occasionally and up to 10 pounds frequently. She can sit for at least 6 hours out of an 8-hour workday with normal breaks. [Plaintiff] can stand and/or walk for at least 6 hours out of an 8-hour workday with normal breaks. She no more than frequently stoop[sic]. She should not have to do such things as talk to public or over the phone as part of the work.

(R. 20). In explaining the RFC determination, the ALJ discussed Plaintiff's testimony, medical records, and medical opinion evidence in the record, as summarized in part below.

#### ii.     Plaintiff's Testimony

At the December 21, 2018 hearing, Plaintiff testified to the following. She was 46 years old and lived with her husband and nephew. (R. 21). Her husband receives disability income based on type II diabetes, neuropathy in his hands and feet, and degenerative disc disease. *Id.* The most significant issues preventing her from working are pain in her lower back, which radiates into her hips, and pain in her feet and hands. *Id.* Activities that exacerbate her pain include reaching up, reaching down, and holding an object in front. *Id.* She can stand or walk for approximately ten minutes and has difficulty reaching and holding

objects in front of herself. Plaintiff spends approximately 85 percent of the day lying in bed. *Id.* Her lower back pain is alleviated somewhat by pain medication, heating and cold packs, and chiropractic treatment. *Id.*

According to her testimony, Plaintiff's neuropathy causes numbness in her hands and feet periodically, but elevation relieves the numbness in her feet. *Id.* She drops objects due to problems with her hand strength. *Id.* Due to neck pain, she has a limited range of motion bending forward and turning her head from side to side. *Id.* She believes that she lost her job at Dairy Queen because her hearing problem made it difficult to communicate with customers and coworkers. *Id.* Plaintiff said that she cries a lot due to depression and is sad all the time, although she takes medication that helps. *Id.* Plaintiff has headaches two to three times per week and experiences extreme headaches two to three times per month. *Id.*

### iii. Medical Records

#### *Hearing and Mental Impairments*

Plaintiff had congenital hearing loss and wore hearing aids as a child. (R. 23). In a hearing test in May 2017, she had 60 percent word recognition in the left ear and 76 percent word recognition in the right ear. *Id.* Her audiologist recommended hearing amplification in both ears. *Id.*

In July 2017, Peter Ciali, Ph.D. examined Plaintiff on a consultative basis. *Id.* Plaintiff exhibited good eye contact and adequate hygiene. *Id.* She complained of back pain, hearing loss, and depression. *Id.* Plaintiff's score on the MoCA was in the normal range. *Id.* She had notable difficulty hearing and evidenced slight articulation errors when speaking, although her speech rate, rhythm, and volume were normal. (R. 23-24). She was sad and

tearful throughout the encounter but appeared to approach the examination with honesty and displayed intact judgment and fair insight into her mental health problems. (R. 24). Dr. Ciali assessed Plaintiff with depression, with a fair prognosis for improvement, and recommended formal mental health treatment. *Id.* He opined that Plaintiff's ability to perform work-related mental activities is mildly impaired, and her ability to interact and adapt socially is mildly deficient due to hearing loss. *Id.* The ALJ accorded great weight to Dr. Ciali's opinion, noting that it was based on a thorough clinical interview and is consistent with and supported by other mental health records. *Id.*

Plaintiff received treatment for depression in August and September of 2018. (R. 25). In August 2018, she complained of neck pain and lower back pain as well as depression. *Id.* She had a body-mass index of 31.4. *Id.* She was well-developed, well-nourished, and in no acute distress; her cognitive functioning, affect, and attitude were normal; and her thought process and content were unimpaired. *Id.*

*Emergency Room Records*

Plaintiff visited the emergency room at Oklahoma State University Medical Center several times between 2015 and 2018 for various issues. (R. 22). In March 2017, Plaintiff presented with complaints of headache and back pain. *Id.* She had mild tenderness to palpation of the paraspinal muscles of the lumbar spine, no midline pain, and good reflexes, sensation, and strength. *Id.* Her neck was supple and non-tender. *Id.* A subsequent magnetic resonance imaging (MRI) of Plaintiff's brain revealed no acute intracranial process. *Id.* Examination notes by Regina Lewis, D.O., in March 2017 noted that there were "no findings to suggest etiology of [Plaintiff's] symptomatology." (R. 22, 445).

Plaintiff achieved excellent results on a stress echocardiogram on April 17, 2017. (R. 22). On April 20, 2017, Plaintiff presented with complaints of body aches and was assessed with community-acquired pneumonia. *Id.*

In November 2017, Plaintiff presented with complaints of pain in her right foot. *Id.* The right dorsal aspect of the right foot was tender to palpitation. *Id.* An x-ray revealed no acute findings but showed chronic degenerative changes in the mid-foot and a small heel spur. *Id.* Plaintiff was assessed with right foot pain with a history of peripheral neuropathy. *Id.*

### Treatment Records Prior to Alleged Disability Onset

The ALJ noted various treatment records from the period between June 2016 and October 2016, stating that these records were considered in his decision. *Id.* However, the ALJ noted that each of these records predate Plaintiff's alleged onset date of November 28, 2016, and that "[t]here is medical evidence not pertinent to the period of disability in question." *Id.* (discussing Exhibits 1F, 2F, 3F, and 4F)).

### Pain Management

Plaintiff received pain management treatment from Oklahoma Pain and Wellness beginning in May 2017. (R. 22-23). Leslie Chan, M.D., noted on Plaintiff's May 1, 2017 visit that an x-ray of the cervical spine taken on April 11, 2017 showed mild degenerative disc disease changes at C5-6 and C6-7. (R. 22-23, 420). Plaintiff appeared alert, oriented, in no acute distress, and well-developed. (R. 23). There were no visible masses on her neck. *Id.* Her speech and cognition were intact, and her behavior was appropriate. *Id.* She had tenderness to palpitation at L4-L5 and L5-SI. *Id.* The pain was reproduced with facet-

loading maneuvers on the right and with a bilateral FABER test. *Id.*[4] Her bilateral sitting straight leg raise was negative. *Id.* Plaintiff had a normal gait and posture with no paraspinal muscle spasm. *Id.* She had normal strength and sensation in her upper and lower extremities. *Id.* Dr. Chan assessed Plaintiff with cervical spondylosis without myelopathy, bilateral sacroiliac joint pain, lumbosacral spondylosis without myelopathy, low back pain, neck pain, occipital headache, and long-term opioid therapy. (R. 23, 422). Plaintiff was advised to continue with conservative treatment including a home exercise program, moist heat, and stretches. (R. 23). Plaintiff also received bilateral lumbar facet injections at L4-L5 and L5-SI. *Id.*

On August 3, 2017, Plaintiff presented for a follow-up visit with Oklahoma Pain and Wellness for complaints of lower back, hip, and neck pain. *Id.* Plaintiff again presented as alert, oriented, in no acute distress, and well-developed. *Id.* Plaintiff's speech and cognition were intact, and her behavior was appropriate. *Id.* Dr. Chan noted tenderness to palpitation of Plaintiff's cervical spine, with a negative Spurling maneuver. (R. 23, 427). Plaintiff had tenderness in the lumbosacral spine, with the pain reproduced with facet-loading maneuvers on the right, and a positive bilateral FABER test. (R. 23). Plaintiff had a normal gait and posture with no paraspinal muscle spasm. *Id.* She had normal strength and sensation in her upper and lower extremities. *Id.* Dr. Chan assessed Plaintiff with neck pain, low back pain, occipital headaches, cervical and lumbar spondylosis without myelopathy, lumbar spinal

---

[4]     The FABER test measures flexion, abduction, and external rotation of the hip joint. Stedman's Med. Dict. 904980 (Nov. 2014).

stenosis, and bilateral sacroiliac joint pain. (R. 23, 428-429). Plaintiff was again advised to continue with a conservative home treatment regimen. (R. 23).

In October and November of 2017, Plaintiff visited Oklahoma Pain and Wellness with complaints of neck, back, and hip pain. (R. 24). Her cervical spine and lumbar/sacral spine had tenderness to palpitation. *Id.* Her straight leg raise was negative bilaterally, pain was reproduced with facet loading on the right, and FABER testing was positive bilaterally. Plaintiff had a normal gait and normal strength and sensation in the extremities. *Id.*

On December 4, 2017, Plaintiff's cervical examination was normal but showed tenderness to palpitation, and her Spurling maneuver was negative. *Id.* Her thoracic spine was normal. *Id.* Her lumbar/sacral spine had tenderness to palpitation, with a negative straight leg raise bilaterally, pain reproduced with facet loading on the right, and a positive bilateral FABER test. *Id.* She had a normal gait and normal strength and sensation in the upper and lower extremities. *Id.* Her January 5, 2018 examination yielded similar findings. *Id.*

On March 2, 2018, Plaintiff presented with complaints of back, hip, and neck pain. (R. 24-25). Her cervical and lumbar sacral spine showed tenderness as in prior examinations. Her left knee had tenderness to palpitation and crepitus, mild pain with range of motion, full extension, flexion to 90 degrees, and varus/valgus stress at 30 degrees +1. (R. 24). Plaintiff received a knee injection. *Id.* On April 3, 2018, Plaintiff's follow up visit notes included the results of a recent MRI of her lumbar spine. (R. 24-25). The MRI showed mild facet arthropathy throughout the lumbar spine with minimal left paracentral disc

bulging, lumbosacral junction causing mild narrowing of the left lateral recess at L5-SI. (R. 25).

The record includes progress notes from several visits to Morton Comprehensive Health Services between December 14, 2017 and October 25, 2018. (R. 25, 459-466). On July 3, 2018, Plaintiff presented for medications and complaints of lower back and neck pain. (R. 25). Plaintiff's neck showed mild to moderate tenderness to palpitation of the spinous process. *Id.* Her cervical spine appeared normal and showed pain with motion, but no spasm; normal strength, and normal stability. *Id.*

In August 2018, Andrew Barker, M.D. examined Plaintiff for neck and back pain at Hillcrest South Medical Plaza. (R. 25, 468). Dr. Barker assessed chronic pain syndrome, degeneration of the lumbar or lumbosacral intervertebral disc, chronic neck pain, and lumbar nerve root disorders. *Id.* Plaintiff's straight leg raise was positive, and facet loading was positive bilaterally. *Id.* She had moderate facet line tenderness in her cervical and lumbar region but non-tender sacroiliac joints. (R. 25, 469).

### iv.    Intensity, Persistence, and Limiting Effects of Symptoms

The ALJ found "inconsistencies between [Plaintiff's] subjective complaints and objective medical evidence." (R. 21). In assessing the severity of Plaintiff's symptoms, the ALJ noted a "dichotomy between [Plaintiff's] allegations and the evidence of record as a whole," as well as "inconsistencies in the record." (R. 26). Noting Plaintiff's "many physical complaints," the ALJ first discussed the objective medical evidence relating to Plaintiff's degenerative lumbar disc disease. *Id.* The ALJ concluded that the evidence "indicate[s] no more than mild or minimal problems" that the RFC limitations adequately accommodate.

*Id.* Regarding Plaintiff's complaints of peripheral neuropathy, the ALJ found that despite Plaintiff's reports of a history of neuropathy, the record consistently showed normal sensation in the extremities and normal gait, stance, and strength. *Id.* The ALJ thus determined that while Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id.*

Addressing Plaintiff's hearing loss, the ALJ explained that the audiology testing results were inconsistent with the suggestion of Plaintiff's representative that Plaintiff cannot respond appropriately to supervisors one-third of the time. (R. 26). The ALJ also noted that the observed "profound hearing loss" was in the absence of hearing aids. *Id.* Additionally, the ALJ noted that Plaintiff's activities of daily living include watching television daily and talking to others daily, talking on the phone, and attending church regularly. (R. 27). Plaintiff also reported that she follows written instructions well. *Id.* Accordingly, the ALJ found the limitations reflected in the RFC appropriate. *Id.*

State agency reviewing physicians opined that Plaintiff is capable of work at a medium exertion level with postural limitations. (R. 27, 106-135). The ALJ assigned little weight to this finding, determining a limited light-exertion RFC to be "more reasonable given her impairments." (R. 27). However, the ALJ accorded great weight to the state agency physicians' finding that Plaintiff's mental impairment is non-severe, noting that finding is consistent with Plaintiff's MoCA score and the observations made during her psychological treatment appointments. *Id.*

14

Finally, the ALJ addressed Third Party Function Reports submitted by Plaintiff's husband in May 2017 and September 2017. *Id.* The ALJ accorded some weight to his "objective observations and comparison . . . [where] consistent with the record and [Plaintiff's] testimony." *Id.* The ALJ noted, however, that Plaintiff's husband is not qualified to give opinions on medical diagnoses or symptoms, his opinions are not based on medical testing and observations, and his comments "would not be unbiased due to the nature of their relationship." *Id.*

### v.  Past Relevant Work

Plaintiff's past relevant work includes jobs performed at a light exertional level, with specific vocational preparation (SVP) levels four through six; and at a medium exertional level, with an SVP level of two. (R. 27-28). Based on Plaintiff's RFC and the VE's testimony, the ALJ determined that Plaintiff cannot perform her past relevant work as a fast food manager, assistant manager, production worker, or shift leader. *Id.*

### E.      Step Five

The ALJ determined that, despite Plaintiff's severe impairments, she retains the ability to perform substantial gainful activity consistent with the RFC. (R. 21). Based on Plaintiff's RFC and the VE's testimony, the ALJ found that Plaintiff can perform the requirements of occupations including small products assembler, packer inspector, and electronics assembler, and that such work exists in significant numbers in the national economy. (R. 28-29). Accordingly, the ALJ found Plaintiff not disabled at step five.

## IV.    Discussion

Plaintiff challenges the ALJ's findings at step two; his evaluation of the evidence in formulating Plaintiff's RFC; the ALJ's evaluation of the intensity, persistence, and limiting effects of Plaintiff's symptoms; and the failure to address certain functional categories in the RFC determination.

### A.    Step Two

Plaintiff argues that the ALJ failed to conduct proper analysis at step two and, as a result, failed to find Plaintiff's cervical degenerative disc disease, depression, and fatigue severe. Generally, an ALJ's "failure to find a particular impairment severe at step two is not reversible error when the ALJ finds that at least one other impairment is severe." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). This is so because an ALJ "is required to evaluate the combined impact of a claimant's impairments throughout the disability determination process." *Williams*, 844 F.2d at 756 (citing 42 U.S.C. § 423(d)(2)(C)); *see also Allman*, 813 F.3d at 1330. Here, the ALJ found Plaintiff's degenerative lumbar disc disease, peripheral neuropathy in her feet, borderline obesity, and poor hearing to be severe impairments. Accordingly, under *Allman*, the ALJ's determination that other impairments were not severe is not reversible error. (R. 19-20).

Plaintiff argues nonetheless that the ALJ's failure to find these impairments severe fatally flawed his analysis at subsequent steps. This argument is more appropriately framed as a challenge to the ALJ's evaluation of the medical evidence of record in determining Plaintiff's RFC, as set forth below.

B.     RFC

Plaintiff argues that the ALJ erred in evaluating the evidence to formulate her RFC. Under the substantial evidence standard of review, "[t]he record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence. Rather, in addition to discussing the evidence supporting [the] decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Mays*, 739 F.3d at 576 (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996)).

### i.     Cervical Degenerative Disc Disease

Plaintiff contends the medical records show that her headaches are related to degenerative disc disease of the cervical spine. As discussed *supra*, the ALJ addressed Plaintiff's pain management treatment records in some detail in concluding that Plaintiff's headaches and degenerative disc disease of the cervical spine are non-severe impairments. However, Plaintiff argues the ALJ ignored, or rejected without explanation, medical opinion evidence concerning her cervical spine impairment and evidence suggesting that her headaches are cervicogenic in origin.

### *Dr. Malone's October 2016 Opinion*

Plaintiff contends the ALJ failed to properly address medical treatment records from Dr. Malone, who treated Plaintiff in 2016. In his examination notes from October 27, 2016, Dr. Malone indicated that he "suspect[ed] that Plaintiff has facet generated cervical and lumbar pain with cervicogenic headaches." (R. 389). He advised that Plaintiff return in two weeks and noted that she had recently had MRIs. *Id.*

The ALJ stated that office treatment records from this visit "were considered" in his decision. (R. 18). However, the ALJ noted that this encounter occurred before the alleged onset date of November 28, 2016 and suggested that such evidence therefore is not "pertinent to the period of disability in question." (R. 22). To the extent the ALJ rejected Dr. Malone's October 2016 opinion *solely* because it predated Plaintiff's alleged disability onset date, it was legal error. Remoteness in time alone is not a proper reason for rejecting an opinion. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1223 n.15 (10th Cir. 2004); *see also Lackey v. Barnhart*, 127 F. App'x 455, 458-59 (10th Cir. 2005) (unpublished) ("No authority is cited for the proposition that medical reports prior to the operative onset date are categorically irrelevant and, indeed, our precedent is to the contrary.") (citing *Hamlin,* 365 F.3d 1223 n.15).[5] However, because the ALJ stated that he considered these records in his evaluation of the record, the undersigned finds no grounds for reversal on this issue.

Moreover, Plaintiff has not shown that the ALJ had a duty to address Dr. Malone's comments in his decision. Plaintiff does not explain how Dr. Malone's observations contradict other medical evidence that the ALJ relied on or that they are inconsistent with the ALJ's RFC determination. Diagnosis and/or treatment of a condition alone do not establish a medically determinable impairment. Rather, the focus of a disability determination is on the functional consequences of a condition. *See Coleman v. Chater*, 58 F.3d 577, 579 (10th Cir. 1995); *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v)

---

[5]     Under 10th Cir. R. 32.1(A), "[u]npublished decisions are not precedential, but may be cited for their persuasive value."

(explaining that at step five, the agency considers its "assessment of [a claimant's] residual functional capacity" along with "age, education, and work experience to see if [the claimant] can make an adjustment to other work"); *id.* §§ 404.1545(a)(1), 416.945(a)(1) (explaining that residual functional capacity "is the most you can still do despite your limitations"). Dr. Malone's October 2016 opinion, including his comment regarding the possible origin of Plaintiff's headaches, does not say anything about Plaintiff's functional limitations. Accordingly, the ALJ did not commit reversible error by failing to address the specific comments Plaintiff cites from Dr. Malone's notes.

*Dr. Barker's August 2018 Opinion*

Plaintiff was treated by Dr. Barker on August 10, 2018, based on her complaints of neck pain and back pain. (R. 467-476). In his decision, the ALJ related Dr. Barker's diagnoses and discussed his observations on visual inspection of Plaintiff's neck, palpitation of the spine, and FABER, straight-leg raise, and Spurling maneuver tests. (R. 25). However, the ALJ did not address certain portions of Dr. Barker's notes relating to Plaintiff's neck pain. Specifically, Dr. Barker stated:

> I explained to the patient that I understand that an MRI of the cervical spine may be cost prohibitive. I recommended that she look into different insurance carriers to see if she is able to afford insurance coverage. I do believe she would benefit from an MRI of the cervical spine. She may benefit from interventional treatment, but without additional information, I am unable to say for sure.

(R. 469).

Plaintiff faults the ALJ's decision for failing to discuss these comments or the weight he accorded them. However, Plaintiff does not explain how further examination of

her cervical spine might refute the ALJ's RFC determination that she can perform a limited

range of light work. Light work

> involves lifting no more than 20 pounds at a time with frequent
> lifting or carrying of objects weighing up to 10 pounds. Even though
> the weight lifted may be very little, a job is in this category when it
> requires a good deal of walking or standing, or when it involves
> sitting most of the time with some pushing and pulling of arm or leg
> controls. To be considered capable of performing a full or wide range
> of light work, [a claimant] must have the ability to do substantially
> all of these activities.

20 C.F.R. § 404.1567(b). The ALJ placed certain additional limitations on Plaintiff's ability

to lift/carry, sit, stand and/or walk, stoop, and interact with the public and on the phone.

Plaintiff has not pointed out any objective medical evidence or medical opinion evidence

in the record indicating that her neck pain or her headaches, to the extent they may be

related to her cervical spine condition, limit her beyond the RFC determination. *See*

*Hendron v. Colvin*, 767 F.3d 951, 955 (10th Cir. 2014) (holding claimant's complaints of

foot problems were not significantly probative, where evidence indicated claimant could

meet the standing and walking requirements of sedentary work and ability to push with

one's foot is not a requirement of sedentary work). Accordingly, Plaintiff has not met her

burden to show that these comments are significantly probative.

Moreover, Plaintiff testified at the hearing that the main problems preventing her

from working are her lower back and her hands and feet. (R. 21). She does not attempt to

connect those symptoms with her cervical spine condition. Plaintiff's argument thus asks

the court to re-weigh the evidence, which is not permitted. *Noreja*, 952 F.3d at 1178.

Accordingly, the failure to find Plaintiff's alleged cervical spine disease severe based on

Dr. Barker's August 2018 opinion was not reversible error.

*Other Evidence*

Plaintiff argues that the ALJ ignored other medical evidence indicating that her severe headaches stem from her cervical spine disease. During Plaintiff's examination on May 1, 2017, Dr. Chan related that "Facet joint origin of pain is suspected. Plaintiff's pain is severe and unresponsive to conservative medical treatments . . . exacerbated by extension and rotation or is associated with rigidity." (R. 422). Plaintiff contends these comments constitute significantly probative evidence regarding her cervical spine. However, Dr. Chan's notes indicate that these comments referred to Plaintiff's lumbar spine, rather than her cervical spine. *Id.*

On December 4, 2017, Steven Petticrew, P.A., observed tenderness to palpitation in Plaintiff's cervical spine. The ALJ explicitly noted this finding in his decision. (*See* R. 24). Plaintiff argues that the ALJ erred in failing to cite, in addition, Mr. Petticrew's observation of "dense, painful spasms (SCM) bilaterally" in Plaintiff's cervical spine. (R. 502-503). However, that comment simply provided further detail regarding the tenderness to palpitation, which the ALJ addressed.

Plaintiff has not shown that the ALJ's discussion of these sources' findings was inadequate. Moreover, Plaintiff has failed to show that this evidence indicates any functional limitation beyond those included in the RFC determination. Accordingly, the ALJ's failure to discuss these comments is not reversible error.

*Duty to Develop Record*

Plaintiff also argues that the ALJ failed in his duty to fully develop the record concerning her cervical spine impairment. She contends the medical record is incomplete, because she lacked insurance and could not afford proper treatment and diagnostic tests.[6] Plaintiff contends the ALJ's failure to seek a consultative examination and/or a medical expert's review concerning Plaintiff's cervical degenerative disc disease is reversible error.

The applicable regulations state:

> Obtaining a consultative examination. We may ask you to attend one or more consultative examinations at our expense. *See* §§ 416.917 through 416.919t for the rules governing the consultative examination process. Generally, we will not request a consultative examination until we have made every reasonable effort to obtain evidence from your own medical sources. We may order a consultative examination while awaiting receipt of medical source evidence in some instances, such as when we know a source is not productive, is uncooperative, or is unable to provide certain tests or procedures. We will not evaluate this evidence until we have made every reasonable effort to obtain evidence from your medical sources.

20 C.F.R. 416.912(b)(2).

Plaintiff argues that, based on Dr. Malone's October 2016 comments, the ALJ was required to obtain a consultative examination and/or medical expert testimony regarding

---

[6]     Plaintiff states that she was homeless during the relevant time period and points to evidence that she was unable to pay for treatment at times. It is not clear when and for how long Plaintiff may have been homeless, and Plaintiff's brief does not indicate where such information may be found in the record. The undersigned notes that Plaintiff provided a street address for her residence in her application for disability benefits. (R. 210). At the hearing, she provided the same street address and testified at the hearing that she lived with her nephew and her husband, who receives disability income. (R. 87).

the origin of her headaches. However, after her appointment with Dr. Malone, Plaintiff saw other providers numerous times regarding her pain issue within the relevant time period. Many of these visits included Plaintiff's complaints of neck and back pain and evaluation of her cervical spine. Plaintiff subsequently received treatment from qualified medical providers for the same problem on several occasions. This continuity of treatment vitiates Plaintiff's argument that the record required further development on this issue. In the context of the record as a whole, Dr. Malone's October 2016 comments did not trigger an obligation by the ALJ to order a consultative examination.

Plaintiff also contends Dr. Barker's August 2018 opinion, discussed *supra*, triggered a duty by the ALJ to further develop the record. The undersigned disagrees. Dr. Barker suggested information from an MRI may help him to form an opinion as to whether Plaintiff would benefit from "interventional treatment." (R. 469). It did not suggest that additional information was needed to determine any potential functional limitation. *Cf. Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) (holding that ALJ's observation that opinion source "did not give a reason for his opinion that claimant is unable to work triggered the ALJ's duty to seek further development of the record before rejecting the opinion").

Plaintiff cites *Baker v. Barnhart*, 84 F. App'x 10, 14 (10th Cir. 2003), for the proposition that the ALJ not only had the discretion to order a consultative examination but was required to do so based on Dr. Barker's recommendation of an MRI of the cervical spine. In *Baker*, the court of appeals held that the record lacked *any* substantial evidence to support ALJ's finding that claimant could perform full range of sedentary work despite her

severe impairment of obesity. *Baker*, 84 F. App'x at 14. Moreover, the court found the record so lacking that "the ALJ was not in a position to make any RFC determination— there is no evidence to support such a finding." *Id.* Here, in contrast, the record is substantial; notably, the ALJ's discussion of the evidence supporting his RFC determination spans seven single-spaced pages. With respect to Plaintiff's cervical spine impairment, the ALJ discussed records from multiple treating sources over a period of nearly two years. Accordingly, *Baker* fails to support Plaintiff's argument that the ALJ was required to develop the record further. Plaintiff's other cases are similarly inapposite. *See Thomas v. Barnhart*, 147 F. App'x 755, 760 (10th Cir. 2005) (noting that while ALJ could not properly reject psychological opinion solely because it was based on subjective statements, it was for ALJ to determine whether medical record regarding mental impairments required further development); *Lee v. Barnhart*, 117 F. App'x 674, 697 (10th Cir. 2004) (noting "very thin medical exhibit file" and fact that ALJ "made no effort to develop the medical record, even though there were ample clues that significant portions of it are missing").

Finally, Plaintiff contends the ALJ improperly assumed that Plaintiff's back and neck pain required only conservative treatment, and accordingly rejected Dr. Barker's recommendation of further testing. But the record shows that Plaintiff's treating medical providers stated just that on multiple occasions. (R. 397, 422 ("Continue with conservative treatment to include home exercise program, moist heat, and stretches."); 428 (same); 433 (same)). Thus, this argument is unfounded.

### ii.    Fatigue and Depression

Plaintiff argues the ALJ failed to address her fatigue, medication side effects, and sleep disturbance associated with her pain and depression. The ALJ determined that Plaintiff's depression is non-severe, causing no more than minimal limitation in her ability to perform basic mental work activities. (R. 18). In explaining that determination, the ALJ noted that, while Plaintiff claimed to have depression for four years, she did not seek out treatment until August 9, 2018. *Id.* It is legal error for an ALJ to determine the severity of a claimant's mental impairment based on a lack of treatment. The Tenth Circuit has observed in an unpublished opinion that "the regulations set out exactly how an ALJ is to determine severity, and consideration of the amount of *treatment* received by a claimant does not play a role in that determination. This is because the lack of treatment for an impairment does not necessarily mean that the impairment does not exist or impose functional limitations." *Grotendorst v. Astrue*, 370 F. App'x 879, 883 (10th Cir. 2010) (unpublished); *see* 20 C.F.R. § 404.1520a. Accordingly, in the ALJ's step two analysis, it was improper to evaluate the severity of Plaintiff's depression based on a lack of treatment.

However, the ALJ's error at step two is not grounds for reversal. *See Allman*, 813 F.3d at 1330; *see also Williams*, 844 F.2d at 756 (citing 42 U.S.C. § 423(d)(2)(C)). The ALJ addressed Dr. Ciali's examination findings in detail, including his opinion that Plaintiff is only mildly impaired in her ability to perform work-related mental activities. The ALJ also provided valid reasons for according great weight to Dr. Ciali's opinion, noting the thoroughness of Dr. Ciali's examination and the consistency of his findings with other medical evidence in the record. Finally, Plaintiff has not identified significantly

probative evidence that the ALJ failed to address regarding the sedation and fatigue side effects of her medication. Accordingly, the undersigned finds that the ALJ appropriately evaluated Plaintiff's mental impairment at other steps of his analysis, and substantial evidence supports the ALJ's determination regarding Plaintiff's mental RFC.

### iii.    Obesity and Neuropathy

Although the ALJ found Plaintiff's obesity and peripheral neuropathy in her feet to be severe, Plaintiff nonetheless challenges the ALJ's evaluation of these impairments. Plaintiff argues that, despite finding these impairments to be severe, the ALJ failed to properly evaluate the medical evidence in determining the functional limitations resulting from these impairments. However, Plaintiff has not pointed to medical evidence in the record indicating that the record concerning depression and fatigue is incomplete. Nor has Plaintiff shown that the ALJ ignored or failed to explain significantly probative evidence that Plaintiff's obesity and neuropathy result in functional limitations beyond those in the RFC determination. Accordingly, this argument is without merit.

### C.    Consistency and Credibility Determination

Plaintiff contends the ALJ improperly discounted her subjective complaints and her husband's statements in his third-party function report. Plaintiff argues that the ALJ failed to give reasons for discounting her subjective allegations of pain and of her need for rest breaks. Plaintiff argues that the ALJ "miscast" certain evidence and "mischaracterized" her statements regarding her activities of daily living. (Pl. Op. Br., Doc. 13 at 11). She notes that her medical providers consistently reported her pain symptoms, she consistently took medication for pain, and she adhered to her opioid contract.

26

An ALJ is required to evaluate the claimant's statements about the intensity, persistence, and limiting effects of alleged symptoms. SSR 16-3 outlines the process ALJs must follow in evaluating such statements. 2017 WL 5180304 (2017); *see also* 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3). In evaluating a claimant's symptoms:

> it is not sufficient for [the ALJ] to make a single, conclusory statement that "the individual's statements about his or her symptoms have been considered" or that "the statements about the individual's symptoms are (or are not) supported or consistent."
>
> \* \* \*
>
> The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.

2017 WL 5180304 at \*10.

As set forth *supra* Part III, the ALJ explained, with reference to specific evidence in the record, his finding that the objective medical evidence does not support the intensity, persistence, and limiting effects Plaintiff claims. The ALJ noted that Plaintiff had given inconsistent explanations for why she left her last job at Dairy Queen. Additionally, the ALJ observed that, despite consistently rating her pain at between six and nine on a scale of ten, Plaintiff was never reported to be in acute distress and was consistently found to be alert and oriented, which is inconsistent with such a severe level of pain. (R. 26).

"Credibility determinations are peculiarly the province of the finder of fact"—that is, the ALJ, not the court. *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). Under *Kepler*, the ALJ must explain "the link between the evidence and credibility

determination." 68 F.3d at 391. The ALJ has done so here. The ALJ's explanation with references to evidence in the record, as set forth above, satisfied his obligation to give "specific reasons . . . supported by the evidence in the case record" for his credibility determination. 20 C.F.R. § 404.1529; *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000) ("So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of *Kepler* are satisfied."); *see also* SSR 16-3p, 2016 WL 1237954. The court will not second-guess an ALJ's evaluation of a claimant's symptom allegations where, as here, the ALJ has properly considered and evaluated Plaintiff's subjective complaints. *See White v. Barnhart*, 287 F.3d 903, 910 (10th Cir. 2002) (ALJ's evaluation of symptom allegations "warrant particular deference").

### D.    Function-by-Function RFC Assessment

SSR 96-8p requires an ALJ to perform a "function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities" in determining a claimant's RFC. SSR 96–8p, 1996 WL 374184, at *3; *see Hendron*, 767 F.3d at 956. With respect to exertional capacity, the functions include "[s]itting, standing, walking, lifting, carrying, pushing, and pulling." SSR 96-8 (noting that each function must be considered separately, even if the final RFC assessment will combine activities (e.g., "walk/stand, lift/carry, push/pull"). Nonexertional activities include "postural (e.g., stooping, climbing), manipulative (e.g., reaching, handling), visual (seeing), communicative (hearing, speaking), and mental (e.g., understanding and remembering instructions and responding appropriately to supervision." *Id.*

Plaintiff contends the ALJ failed to consider certain evidence in the record

concerning functional limitations resulting from Plaintiff's back pain, neck pain, peripheral neuropathy and hand numbness, and obesity. Plaintiff points to her own testimony regarding her hearing loss and medical records showing that Plaintiff complained at various times of back pain, numbness in her fingers, hand pain, and unspecified issues with her left hand. (*See* Pl. Op. Br., Doc. 13 at 14). Plaintiff contends it was legal error for the ALJ not to address this evidence in determining whether additional limitations were warranted as to Plaintiff's ability to push or pull; to handle or finger objects; and to communicate with supervisors and coworkers.

Plaintiff argues that, under *Guice v. Comm'r, SSA*, 785 F. App'x 565, 568 (10th Cir. 2019), even if substantial evidence supports the RFC determination, the ALJ's decision should be reversed on the independent ground of legal error for failure to consider all of the record evidence concerning these conditions. Plaintiff's reliance on *Guice* is misplaced both factually and because, as Plaintiff acknowledges, it is an unpublished decision and therefore is not binding precedent on this court. *See Guice*, 785 F. App'x at 568 (explaining that ALJ "did not discuss the cited evidence or otherwise explain her findings regarding the medical-opinion evidence"); 10th Cir. R. 32.1(A). As set forth *supra* Part II, the ALJ extensively discussed the medical record and other evidence concerning back pain, neck pain, hand pain and numbness, and obesity. Plaintiff points to various other instances in the record indicating that Plaintiff complained of numbness, swelling, or pain in her hand (R. 92, 336, 369, 462, 463) or back pain (R. 397, 422), which she contends is related to obesity. This evidence consists mainly of reports by medical providers relating Plaintiff's own reports of her symptoms. Plaintiff has not identified objective medical evidence or

other significantly probative evidence on these issues that the ALJ ignored. While the ALJ must assess each function, he is not required to expressly address each function in his decision. *See Hendron*, 767 F.3d at 957 (noting that ALJ's "failure to find explicitly that [claimant] was capable of sitting for six hours during a regular eight-hour work day was not critical to the outcome of this case"). Accordingly, the ALJ's assessment was adequate.

## V.   Conclusion and Recommendation

The undersigned finds the ALJ's decision is consistent with applicable legal standards and is supported by substantial evidence. Therefore, the undersigned **recommends** that the decision of the Commissioner finding Plaintiff not disabled be **affirmed**.

In accordance with 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b)(2), a party may file specific written objections to this report and recommendation within 14 days. Any such objections must be filed on or before January 19, 2021.[7]

If specific written objections are timely filed, Federal Rule of Civil Procedure 72(b)(3) directs the district judge to:

> determine de novo any part of the magistrate judge's disposition that has been properly objected to.  The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1).

---

[7]   January 18, 2021 is a federal holiday.

The Tenth Circuit has adopted a "firm waiver rule," which provides that the failure to make timely objections to the magistrate judge's findings or recommendations waives appellate review of factual and legal questions. *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)). Only a timely specific objection will preserve an issue for de novo review by the district court or for appellate review.

DATED this 4th day of January, 2021.


Christine D. Little
United States Magistrate Judge